In the Matter of F. Robert LIVELY.

No. 49S00–9311–DI–1258.

Supreme Court of Indiana.

Dec. 15, 1995.

Duge Butler, Jr., Indianapolis, for respondent.

Donald R. Lundberg, Executive Secretary, Robert C. Shook, Staff Attorney, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

The Disciplinary Commission has charged the respondent, F. Robert Lively, with two counts of professional misconduct. Since neither party has petitioned this Court for review of the hearing officer's findings of fact and legal conclusions, this matter now comes before this Court for final resolution. Although we give the hearing officer's report appropriate emphasis since it is the product of direct observation of witnesses, our review of the record is *de novo* in nature and we remain the final arbiters of misconduct and sanction *In re Gemmer* (1991), Ind., 566 N.E.2d 528. This Court has disciplinary jurisdiction of this matter by virtue of the respondent's admission to this state's Bar in 1960.

### Count I.

We now find that, in 1963, the respondent formed an attorney-client relationship with a client (the "husband") that would continue for several decades and entail the respondent's counsel regarding the husband's various business ventures. In 1974, when the husband was married, his new wife (the "wife") also became a regular client of the respondent. The respondent then served as the couple's attorney in all matters.

In 1985, the husband and wife decided to dissolve their marriage. Both consulted with the respondent about the contemplated divorce. He requested that they work together to create a property settlement plan agreeable to both of them. Later, they informed the respondent that they had agreed to a property division. The respondent filed a petition for dissolution, which indicated

that he represented the husband. The court ultimately entered a final decree of dissolution signed by both parties. That decree was prepared by the respondent.

On October 18, 1990, the wife, represented by another attorney, filed a lawsuit against the husband alleging that he failed to pay her money that he owed from two different loans. One of the loans was alleged to have been made before their divorce and the other after their divorce. The respondent defended the husband against the lawsuit, but did not obtain the wife's consent. On December 6, 1991, the wife signed a settlement agreement, drafted by the respondent, which modified the parties' earlier dissolution judgment. Later, after the husband breached the settlement agreement, the wife filed a disciplinary grievance against the respondent with the Commission. The Commission alleged that, contemporaneously with the respondent's receipt from the Commission of a notice of grievance, the wife received a threatening telephone call that she attributed to the respondent. The caller allegedly told her to "call off the dogs" or she would receive no more settlement proceeds from the husband. Shortly thereafter, the wife advised the Commission of her wish that the grievance be dismissed. The respondent does not dispute that he made the call, but contends that it occurred before the grievance and related to another matter.

In its verified complaint, the Commission charges the respondent with violations of Rules 1.7(a),[1] 1.9(a),[2] and 8.4(d)[3] of the *Rules of Professional Conduct for Attorneys at Law*. The hearing officer found that the Commission failed to prove any of the charges by clear and convincing evidence, as required by Admis.Disc.R. 23(14)(f).

**1.** Professional Conduct Rule 1.7(a) provides:

A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) each client consents after consultation.

**2.** Professional Conduct Rule 1.9(a) provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:

■ Upon examination of the entire record before us, we find that the respondent violated Ind.Professional Conduct Rule 1.9(a) by defending the husband against the wife's lawsuit in 1990 without first obtaining the consent of the wife, a former client, to do so. The record does not contain significant evidence establishing the wife's unequivocal consent to the respondent's representation of the husband. It is clear that the wife's 1990 lawsuit was substantially related to the 1985 dissolution proceeding, especially in light of the fact that the 1990 suit was settled by an agreed modification of the dissolution judgment. In essence, the wife successfully relitigated property settlement issues by bringing the 1990 lawsuit against her former husband.

■ We agree with the hearing officer in finding that the Commission failed to prove that the respondent violated Prof.Cond.R. 1.7(a). The hearing officer found that the respondent represented both the husband and wife in their dissolution with the full knowledge and consent of both. A review of the entire record does not conclusively establish who the respondent represented during the dissolution proceedings. Regardless, the evidence does establish that the respondent's actions were taken with the full knowledge and consent of the husband and the wife.

■ Further, we agree with the hearing officer's conclusion that the respondent did not violate Prof.Cond.R. 8.4(d). Although it is undisputed that the respondent telephoned the wife in early 1992, it appears that the telephone call likely related to a matter unrelated to the wife's filing of a disciplinary grievance.

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation ...

**3.** Professional Conduct Rule 8.4(d) provides:

It is professional misconduct for a lawyer to:

.   .   .   .   .

(d) engage in conduct that is prejudicial to the administration of justice.

## Count II.

During the course of a dissolution action in which the respondent represented the husband, the parties agreed that the respondent would hold $10,000 that had been in the husband's possession in his attorney trust account until the divorce was final. Thereafter, the husband provided $9,500 to the respondent, which the respondent deposited into his "office operating account." That account was not designated as a trust account. The respondent later placed the deposit ticket in his check register and informed the wife's attorney that the husband had provided most of the money.

At about the same time, the respondent represented an individual (the "property owner") in connection with a court-ordered demolition of a building. The property owner had contracted with a demolition company to dispose of the structure and on October 13, 1992, gave $5,000 in cash to the respondent to cover future payments to the demolition company for the contracted work. The respondent did not place these funds into any bank account. He did, however, draw four checks on his office operating account between October 13 and November 6, 1992, made out to the demolition company in the amounts of $1,000, $1,000, $2,000, and $1,000, respectively, as payments for the demolition work. In November, 1992, the property owner again delivered $5,000 in cash to the respondent for future contract payments. The respondent failed to place the money into any bank account. Between November 17 and December 11, 1992, the respondent drew three checks on his office operating account for payment of the contracting fees in an aggregate amount of $5,000. On February 1, 1993, the balance in the respondent's office operating account was $7,959.59. By April 30, 1993, it had sunk to $2,017.45.

In a written statement to the Commission, the respondent stated that he deposited the entire $10,000 tendered to him by the property owner, as well as all of his other April, 1993 receipts, into his office operating account on May 6, 1993. In fact, the respondent deposited a total of $31,000 into that account on May 6, but none of that money was the property owner's. That same day, the respondent drew a check on his office operating account for $10,000 and delivered it to the wife's attorney in settlement of the dissolution case.

■ The Commission charged the respondent with violating Prof.Cond.R. 1.15(a),[4] 8.4(b),[5] and 8.1(a).[6] The hearing officer concluded that the evidence supported a finding of violation of Prof.Cond.R. 1.15(a) only. We find that the respondent violated that provision by failing to hold the property owner's funds separate from his own property and by failing to deposit the funds into a separate account. We find further that the respondent violated Prof.Cond.R. 8.1(a) by informing the Commission that he had deposited the $10,000 when in fact he had not. Although the pattern of deposits and transactions reveals the respondent's improper management of clients' funds, the hearing officer's findings fail to establish adequately that

4. Rule 1.15(a) provides, in relevant part:
   A lawyer shall hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person....

5. Rule 8.4(b) provides:
   It is professional misconduct for a lawyer to:

   .    .    .    .    .

   (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

   .    .    .    .    .

6. Rule 8.1(a) provides:

   An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
   (a) knowingly make a false statement of material fact;

   .    .    .    .    .

he converted client funds. We therefore find that the respondent did not violate Prof. Cond.R. 8.4(b).

■ Upon a finding of misconduct in attorney disciplinary cases, this Court must assess an appropriate disciplinary sanction. Among the factors we consider are the nature of the misconduct, any resultant actual or potential injury flowing from the misconduct, the respondent's mental state, the duty of this Court to protect the integrity of the profession, and matters in aggravation and mitigation. *In re Ragland* (1995), Ind., 647 N.E.2d 319, *In re Wells* (1991), Ind., 572 N.E.2d 1290. Here, there is no evidence of significant harm to the respondent's clients as a result of the misconduct in either count. His actions in Count I do not reflect a sinister motive but more likely reveal simple inattention or perhaps misunderstanding of his ethical obligations in cases of serial representations. His actions in Count II are more problematic. They reveal a conscious desire to circumvent fundamental principles regarding the handling of client funds. His failure to maintain a clear demarcation between his funds and those held in trust is serious mismanagement. It is this Court's prevailing practice to impose, at minimum, a suspension where an attorney misuses client funds. In this case, however, the findings of the hearing officer are insufficient to support a finding that the respondent intentionally diverted client funds for some inappropriate use. For that reason alone, we decline to impose a suspension and, accordingly, find that the respondent should receive a public reprimand.

It is, therefore, ordered that the respondent, F. Robert Lively, is hereby reprimanded and admonished for the misconduct set out above.

Costs of this proceeding are assessed against the respondent.